EXHIBIT A

January 14, 2008

From: Inmate counsel Erin Hunter #111799
        Camp D, Falcon - 1

To:      Asst. Warden Delaney

Dear Sir:

Before I file a formal complaint against Lt. Col. Harold Sterling and Major Hinyard for intimidation and harassment, I am seeking to resolve this serious matter through an informal resolution -- free from any form of retaliation directly or indirectly.

Warden Delaney, it is well known that being an inmate counsel is one of the toughest jobs in Penitentiary. Local securities dislike us for effectively representing inmates they disfavor, and inmates dislike us because they think we are working with security. Inmate counsels endure a lot of obstacles on both sides of the fence. Especially when security writes us up, we are treated harsher than the average inmate, mainly because the disciplinary board we practice before is the same board who waits to triumph from our dismay. In other words, we are damned if we don't, and damned if we do, but we love our job.

Warden Delaney, as an inmate counsel, we are assigned by Warden Burl Cain to represent other inmates with their legal endeavor. We try to do our jobs the best way we know how without making enemies with security. Obviously, we are not doing a good job. We accept the fact that we are inmates, and we must submit to the demands of security. But when it is for no other reason than harassment, institutional policy gives us the right to seek grievances. Out of all the offices in Camp D's Education Building that inmates control, none of them are shook down more than Legal Aid, and no other inmate is written up more than inmate counsels for items we can legally have.

As such Warden Delaney, I acknowledge that is your camp and I respectfully seek your office first to address this matter before going elsewhere.

Lt. Col. Sterling is not fond of inmate counsels. After taking an inventory of our behavior, we are not aware of anything we did to sparkle his indignation -- other than doing our job. But Lt Col. Sterling is setting a pattern in harassing inmate counsels. It started when inmate counsel Dwight Bell filed a number of motions for his client in DB court and Lt. Col. Sterling was the chairman. After the hearing, he told inmate Bell not to file any more motions in his court. Thereafter, he called inmate counsel coordinator James Matthews to his office and told him to inform all inmate counsels not to file any more motions in court. Matthew complied with his order.

However, shortly thereafter Bell was forced to rescind his order on the demand of a client. He was caught in a catch 22 that we are all now paying for. It was simply a stroke of bad luck. Right after Lt. Col. Sterling told us not to file motions, Bell stood before him again representing a client that demanded he file motions. Bell had no choice but to comply and Lt Col. Sterling set in his chair visibly upset. This was the beginning of his rage against us.

To make matters worse, the following week, which was May 11, 2007, inmate counsel Ralph Stogner went before Lt.Col. Sterling representing an inmate name Antonio Bosley. In the middle of hearing Lt. Col. Sterling cut off the tape recorder and ordered Stogner and his client out the DB room. When they were called back in, Stogner reminded Lt. Col. Sterling that he was not suppose to cut the tape off in the middle of the hearing.  After the hearing, Lt. Col. Sterling again called James Matthew to his office and told him that Stogner was a damn inmate and he cannot tell him want to do. Lt. Col. Sterling then told Matthew to relay his message to the rest of the inmate counsels. This very same day, Lt. Col. Sterling ordered his security officers to shake down the Legal Aid office and to write them up.

At approximately 10:30 a.m. Camp D security officers came into the Legal Aid office and ordered the inmate counsels to go to their respective dormitories. Security demolished the office beyond recognition. They threw the counsels food items in the middle of the floor in one big pile and took pictures. Afterwards, every counsel was written up for rule infractions, such as: food items that came from the prison canteen, the razor blades that we use for making exhibits for our clients legal brief, and the medication, which was the most serious offense. No pills were found, just over the counter medication with other inmates names on the labels. This was found inmate counsel Robert Swift's area.

The next day all inmate counsels sought to talk to Asst. Warden Joe LaMartinere about Lt. Col. Sterling vindictive harassment. Warden LaMartinere held a meeting with the counsels in the presence of Colonel Sharp and Lt. Col. Sterling. Inmate James Matthew, in words not to invoke retaliation from Lt. Col. Sterling, told the Warden that the search stems from inmate counsels trying to do their job in DB court. He told Warden LaMartinere how Lt. Col. Sterling had limited counsels' ability to file motions in DB court. Warden LaMartinere immediately interjected that it is an inmate counsel job to represent inmates with rule infractions and to file motions. He made it clear to Lt. Col. Sterling that inmate counsels should not be hindered in filing motions or any other representation that can be given as long as it does not infringe on the proper operation of security. As for the food items, Asst. Warden LaMartinere allowed the inmate counsels to have food in the office as long as it is not a large quantity.

On May 15, 2007, Lt. Col. Sterling was the DB chairman who held court on the counsels. He gave each counsel an ultimatum to plead guilty to 30-days suspended sentence, or, as to inmates James Matthews and Robert Swift lose their trustee status, and to inmate Dwight Bell, working cell blocks. Inmates Ricky Carthan and Ralph Stogner were not threatened. Under duress, all inmate counsels accepted the plea agreement.

Sometime thereafter, Lt. Col. Sterling ordered the legal aid office shook down again. This time none of the inmate counsels were written up.

However, on January 11, 2008, Lt. Col. Sterling notified the night security, Major Hinyard and Captain Juan Conrad to shake the legal aid office down again. At approximate 12:30 a.m. Major Hinyard called us out from our respective dormitories to see him in his office. When we reported to the office, Major Hinyard and Capt. Conrad informed us that he was ordered to shake the office down.  Everything was taken out the office - computers, books, file cabinets etc., and lined up in the hallway on the floor. Major Hinyard, Capt. Conrad, Capt. Smith and Lt. Cole conducted a thorough search which lasted to 2:30 in the morning. Again, at the end of the search, we were written up for contraband. Such as, at least in my case: food items, homemade pecan cracker made in the hobby shop, a large bag of pecan left over from our Christmas party, one personal photograph, a pair shoes, a State coat and a sweat shirt, a pair of leather gloves that belongs to inmate Ralph Stogner whose desk is next to mines. Stogner uses these gloves for his wheel chair but security

2

inadvertently put them in my area and gave me the charge. Last, but not least, $41.47 worth of stamps that I obtained from the store over the years because I use to do a lot of writing. Most of the stamps were old, ¢32, ¢37 and ¢39 that I had for years.

On May 12, 2008, a day after the search, inmate James Matthew went to Lt. Col. Sterling's office to speak with him concerning an inmate's legal document that he was working on before the search and now he cannot find it. He also spoke with Lt. Col. Sterling's about Stogner's keyboard that got broke during the search. In addition, he reminded Lt. Col. Sterling that Asst. Warden LaMartinere told us that we can keep a small amount of food in the office. In response, Lt. Col. Sterling said nothing about the lost document or broken keyboard. His only response was that we cannot have any food in the office. You are familiar with this incident because you helped us resolve it. Thanks.

However, what you are not familiar with because we were afraid to talk to you about it in front of Colonel Sharp is after inmate Matthews talked, when the shift changed, Major Hinyard called Matthews outside on the walk. He told Matthews that his days are number for telling Lt. Col. Sterling that he broke a keyboard and lost an inmate legal document. Matthews was trying to tell Major Hinyard that he never told Lt. Col. Sterling he broke the keyboard, but Major Hinyard insisted that Matthew was lying so he told Matthews that he was going to get him -- that he better not have food items in the law library or he was going to write us up. Inmate Matthew came back to the office and told me, Rick Carthan and Ralph Stogner what had happened -- that Major Hinyard was out to get us so we immediately left the law office and went to our respective dormitories. We did the same thing Sunday when his shift came on. Major Hinyard and Capt. Conrad is known for physically abusing inmates and setting us up on fabricated writeups so we took no chances.

This is the same thing Lt. Col. Sterling did me when he told you I tried to go to the Main Prison after he told me not to. If this was the case Warden Delaney, he would have locked me up for refusing to obey a direct order. Warden Delaney, he told me I can go to the Main Prison after I told him Sgt. Dennis said I could not go because I was not a trustee. He told me to get a pass from Lt. Bordelon and let him sign it which I did. I fully complied with his order. When I returned with the pass signed by Lt. Bordelon, I was again refused the opportunity to go to the Main Prison. Inmate Matthews eventually went on Sunday January 13, 2008 and picked up the documents. See also Posted Police G-18 and LSP Directive 14.001.

In accordance with Posted Policy G-18, sec. C 4:

Inmates assigned to outcamps, working cellblocks, extended lockdown, administrative segregation, isolation, CCR/Transitional Unit, R.E. Barrow treatment Center, and Death Row will be provided legal aid and access to legal reference materials from the institution's law library system through inmate counsel substitutes assigned to their respective areas of assignment. *Except for inmate counsel substitutes, inmates assigned to these areas will not be permitted to travel to the Main Prison for law library callout.*

LSP Directive 14.001, sec. C 1 page 6:

Inmates assigned to outcamps, cellblocks, transitional unit/CCR and the treatment Center will be provided legal aid and access to legal reference materials through the inmate counsels assigned to their respective areas of assignment. *Except for inmate counsel*

3

*substitutes, inmates assigned to outcamps, cellblocks, transitional unit and the treatment center will not be will not be permitted to travel to the Main Prison for law library callout.*

Clearly, inmate counsel(s) are allowed to travel to Main Prison as necessary to perform their job assignments. A trustee status is not required for an inmate counsel to travel to the Main Prison Law Library.

I was told that I am not allowed to travel because I am not a trustee, as you can see, this is contrary to institutional policy.

Another incident occurred that made me approach you today. Tuesday night, January 15, 2008, when we (inmate counsels) were going to the dorm, Captain Bradley, singled me out and told me that he was giving me a warning. That my head is already on the chopping block -- that I better not breath heavy or else I am gone. Where this come from I do not know, but is obvious someone in security does not like me and I haven't did anything to encourage this problem. These are the obstacles we face just for being an inmate counsel and trying to do the right thing.

Warden Delaney, we are only doing our job the best we know how. All of this stems from us doing our job in DB court. Months ago, Mrs. Trish Foster, our supervisor, came to Camp D and told us personally how we were doing a good job at camp D. She based this on not receiving any complaints, unlike the counsels in other areas of the prison. Now it have come to my attention that I suppose to be selling legal services. All of this comes up after the search of our office.

Please, look at my accounts Warden Delaney. I have close to $600.00 in my account that my family sent me. I do not need anything from another inmate, nor do I accept anything for them. But someone had told my supervisory Trish Foster that I am selling legal service. Here is the names of all the inmates I did and do legal work for:

Jerome Ayro #332345- Falcon two
Ahmad Beck #362990- Falcon four
Kirk Anderson #126329 - Raven 2-R-6
Michael Navarre #410318 - Raven
John Bonvillain, #492830 - Raven
Deandre Johnson # _____ - Raven 2-R-3
Demetric Gilliam #446957 - Raven
Derrick Jones #126920 - Falcon four
Cedric Reed #319591 -Falcon three
Raymond Moliere #410718 - Main Prison/from Raven
Kenneth Freeman, #516306 - Raven 2-R
Robert Marshall, #473428 - Raven 2-R
Samuel Shaw #520191 - Raven 4-L-5
McKinley Abram #096374 – satellite prison/from Falcon Unit

If you choose to, you can interview all the above inmates to see whether I sold my legal services.
Last, but not least, though you said inmates in other area of this building are getting shook down, we are the only ones who are written up for items we can legally have. We ask only that you stop the harassment of inmate counsels, and their future ambition to retaliate against us and me.

4

I also seek your protection that I do not be retaliated against for writing this informal resolution — directly or indirectly.

Thanks for your considerate attention and I pray that we hear from you soon. Again, this is not a formal complaint. This is for you and my supervisor, Mrs. Trish Foster, information. We, the inmate counsels at Camp D are looking for an informal solution to the problems we are having.

Yours truly,

Erin Hunter #111799

copy:

Mrs. Trish Foster
Bryce Hunter – brother



EXHIBIT "D"

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT

INSTITUTION: _LSP_

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Erin Hunter | 111299 | 1-23-08 | Apx 5⁵⁵/A |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Falcon 1 | Inmate Counsil | Fal-1 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Contraband | #9 |

10. Description of Incident (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On the above date and time I Capt Osbon shaky down in Falcon 1 Shook down inmate Erin Hunter 111299 found a Home made Hand cuff Key in His body Lock Box Major B Mark Mitchel

11. Inmate Placed in Adm. Seg.   ☑ Yes   ☐ No

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Capt Joe Osbon | Capt Joe Osbon |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |
|---|---|---|---|
| 1-25-08 | Apx 5⁵⁵/A | | Refuse Sig Copy Given |

| 18. Plea by Inmate: ☐ Not Guilty ☐ Guilty | 19. Verdict: ☐ Not Guilty ☐ Guilty |
|---|---|

| 20. Date of Hearing: | 21. Counsel Substitute DOC#: 323455 |
|---|---|
| 1-29-08   1/31/08   2/1/08 | matthews   323455   323455   Matthews   Matthews |

22. Motions: _See attached Motions & Defer for Inv. Defer 24 hours for cgs & Ivalgh_

23. Reasons for Disposition:
☑ Report is clear and precise.   ☐ Lack of a credible defense/little or no defense.   ☐ Based on his statement.
☑ The officer's version is determined to be more credible than the inmate's.   ☐ Pled guilty/accepted guilty plea.
☐ Only defense is denying contents of report.   ☐ The inmate presented no evidence to refute the charges.
☑ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.   ☐ Plea bargain.
☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
☐ Other _____

24. Reasons for Sentence:
☑ Seriousness of offense.   ☐ The need to protect the institution, employees, or other.
☐ Poor Conduct record. A total of _____ rule violation(s). A total of _____ Schedule B violations since _____.
       A total of _____ # _____ rule violations since _____.
☐ Other _____

25. Sentence:
_Custody chnge to WCB Raven_

Suspended ☐ Days
Imposed ☑

26. Sentence:
Suspended ☐ Days
Imposed ☐

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures

CHAIRMAN (DISCIPLINARY OFFICER)

Candice Breheen Dupart

MEMBER

Exhibit "C"

LEGAL PROGRAMS DEPARTMENT
DISCIPLINARY BOARD

TO:        CAMP D/DISCIPLINARY BOARD
FROM:      OFFENDER, Erin Hunter #111799
DATE:      1/29/2008
RE:        Motion to investigate by Information services or in the alternative Out-Camp
           Warden Mr. Joe Lamartiniere.

## MOTION TO INVESTIGATE/GRANT LIE DETECTOR TEST/DISMISS

**DISCIPLINARY BOARD MEMBERS:** Motion to investigate the Disciplinary Report of:
1/25/2008, is hereby submitted in behalf of Offender Erin Hunter #111799. In support, Offender
would respectfully show the Board the following:

1.    Motion to produce a copy of the Camp D, Falcon-1 Logbook entry of 05:55 am on
1/25/08.An investigation of this matter will reveal that the log book entry of 05:55 a.m. on 1/25/08
in Falcon-1 Dormitory  will verify that there was nothing found at the time when inmate Hunter
was shook down. The accused request the investigation to also determine whether a letter had been
written to Asst. Warden Delaney and Ms. Trish Foster, Dir. Of Legal Prog.  prior to this incident
requesting an informal resolution of the harassment to the Inmate Counsels at Camp D, by Lt. Col.
Sterling and Mjr. Hinyard. The letter further requested that there be no retaliation for requesting
an informal resolution to this matter.   The accused  respectfully request that this investigation
shall be conducted by investigative services or in the alternative Out-Camp Warden J. Lamartiniere
to insure it is conducted fairly and impartially.

MOTION GRANTED [X ]  DENIED [ ]

REASONS: _____

2.    The accused request a Lie detector test at his own expense, and request a lie detector test
to be administered to the reporting officer, Capt. Duford, & Cadet. Wilson who wrote down the
incident in the Falcon-1 Log book and conducted the shake-down of inmate Hunter at 05:50 a.m..

MOTION GRANTED [ ]  DENIED [X ]

REASONS:   Unduly burdensome on the institution

3.    Motion to dismiss due to insufficient evidence.

      MOTION GRANTED [ ]  DENIED [X ]

REASONS:   Credibility of the Officer

**BOARD CHAIRMAN:** Lt. Col. Dupuis

**BOARD MEMBER:** Candice Breechen

Exhibit "C"

## LEGAL PROGRAMS DEPARTMENT
## DISCIPLINARY BOARD

TO:        CAMP D/DISCIPLINARY BOARD
FROM:      OFFENDER, Erin Hunter #111799
DATE:      1/29/2008
RE:        Motion to have the attorney , Ms. Terri Cannon Present during deliberations to
           observe the proceedings.

## MOTION TO HAVE ATTORNEY TERRI CANNON
## PRESENT DURING DELIBERATIONS

DISCIPLINARY BOARD MEMBERS: Motion to have Attorney Terri Cannon present during the
deliberations in this matter, regarding Inmate Counsel Erin Hunter #111799.
In support, Offender would respectfully show the Board the following:

1.      Motion to request the presence of Attorney Ms. Terri Cannon at this hearing, due to
allegations of Past retaliation, harassment, and intimidation of the Inmate Counsels assigned to
Camp D, Law Library.  An investigation into this matter will reveal that a letter was written to
Camp D, Asst. Warden Delaney, regarding unfair harassment and intimidation to the Inmate
Counsels at Camp D.  In the Letter, Inmate Hunter requested that Asst. Warden intervene in bring
about an informal resolution of the matter.  A copy of this letter was also sent to Legal Programs
supervisor, Ms. Trish Foster. A  specific request was made that there be no retaliation for
requesting this informal resolution of this matter. However, as soon as the incident was made know
to the officer that the complaint was lodged against, Inmate Hunter #111799 was immediately
shook down an accused of having a hand cuff key in his possession.  It is obvious that there was
no hand cuff key found, because the officer who shook Inmate Hunter down, wrote in the log book
at 05:55 a.m on 1/25/08 that nothing was found during the shake down. Nevertheless, Capt. Joseph
Duford still wrote Inmate Hunter up and accused him of having a hand cuff key in his possession.
Thus Inmate Hunter feel that this is a serious matter that needs to be observed by the Attorney.


MOTION GRANTED [ ]  DENIED [X ]

REASONS:   Unduly burdensome on the institution


BOARD CHAIRMAN: _____

BOARD MEMBER: _____

Exhibit "D"

## D.B. Investigation

TO:       D.B. Office

FROM:     Billy Mock
          Major/Camp D B-Team

DATE:     January 30, 2008

RE:       Erin Hunter, #111799

Per your request for an investigation pertaining the Disciplinary report issued to inmate Erin Hunter, #111799, on January 25, 2008, I have the following information to provide:

Camp D Security received information that some of the inmate counsels were dealing unauthorized items and canteen items for cigarettes and stamps. Based on that information, an investigation was ordered and the Legal Aid Office, along with some of the other offices in the Camp D Education Building, were shook down.

D-Team Security (Major Hinyard, Captain Conrad, Captain Smith, and Lieutenant Cole) shook down the Legal Aid Office. An excessive amount of cigarettes, stamps, canteen goods, and personal clothing, along with other contraband/unauthorized items (i.e., pecans, a homemade pecan cracker, *Off* mosquito spray, paint, and several pieces of a broken mirror,) were discovered in the various desks in the office. All four inmate counsel's were written up for contraband and/or unauthorized items. In a plea agreement all four counsels pled guilty to possessing unauthorized items.

During the course of the investigation additional information was received that indicated inmate Hunter had a handcuff key that he might be trying to sell. Based on this new information, Captain Joseph Dufour, Lt. Jordan Bordelon, and Sgt. Leonard Wilson, shook down inmate Hunter's locker boxes. Capt. Dufour and Lt. Bodelon discovered the homemade handcuff key in inmate Hunter's locker box.

This is for your information and further handling.

Billy Mock
Major/Camp D B-Team

OFFICER NAME: Leonard Wilson, Jr.    SHIFT Team-B

DATE: 1·25·08

Falcon1

| TIME | OFFICER ENTRY |
|------|---------------|
| 5:25 AM | Initial headcount and security check. Rear exit secure; all secure. Count of 65 inmates (Cleared). |
| 5:27 AM | I relieved C-Team officer of all duties and equipment. I recieved Key # D354, beeper #16, 1 logbook, 1 bed book, 1 MSDS, Posted Policies, Post Orders (read & understood) and 2 fully charged fire extinguishers w/pins intact. |
| | Cpt Dufour is down. Lt Bordle |
| | Audit White Shirt. Clear Bed 5 |
| 5:55 AM | Shake down - Erin Hunter. Upon order of Cpt. Dufour & Lt Bordelon. Nothing found. |
| 6:13 AM | Beeper check. Beeper OK. |
| 6:30 AM | Made rounds. Rear exit secure; all secure. |
| 6:47 AM | Chow call. |
| 6:48 | Made rounds. All secure.    JJBordle |
| 7:20 AM | Cpt Hts Making Rounds. |
| | Made rounds w/Cpt. Hunt. |
| 7:55 AM | Hunters box being secured w/seals. |
| 8:00 AM | Made rounds. Turned TV → 21. Off Air air signal on. |
| 8:08 AM | Turned TV → 21 again + 21 is on. |
| | A Dysart MAT |
| 8:30 AM | Made rounds. All secure. |
| 8:44 | Mad rounds & checked run door with key from both sides. Door & lock work properly    JJBordle |
| 9:00 AM | Made rounds. All secure. |
| 9:30 AM | Made rounds. All secure. |
| 10:00 AM | Made rounds. All secure. |
| 10:25 AM | Made head count. Count of 39 (Cleared). |
| 11:00 AM | Made rounds. All secure. |
| 11:30 AM | Made rounds. All secure. |
| 11:36 AM | Chow call |
| 12:00 PM | Made rounds. All secure. |

287

OFFICER NAME _Leonard Wilson, Jr._                SHIFT _Team B_

DATE: _1·25·08_                          Falcon 1

| TIME | OFFICER ENTRY |
|---|---|
| 12:30PM | Made rounds. All secure. |
| 12³⁴ | Made rounds all secure.                    _(signature)_ |
| 1:00PM | Made rounds. All secure. |
| 1:30PM | Made rounds All secure. |
|  | Cpt. ___ Maj ___ Rounds. |
| 2:00PM | Made rounds. All secure. |
| 2:30PM | Made rounds. All secure. |
|  | Ass. ___ Quilzy Lt. Ct. Stephy Col. Shy |
|  | Maj. Mack Cpt. ___ Mike A. |
| 2:45PM | Inmate Coreneil (James Mathews) making |
|  | rounds. |
| 3:00PM | Made rounds. All secure. |
| 3:20PM | Head count. Count of 46 inmates (cleared) |
| 4:00PM | Made rounds. All secure. |
| 4:04PM | Chow call. |
| 4:30PM | Made rounds. All secure. |
| 4⁰⁰ | Made rounds all secure.                    _(signature)_ |
| 5:00PM | Made rounds. Rear exit secure; all secure |
| 5:25PM | Turned over all duties and equipment to |
|  | relief officer.  _Leonard Wilson, Jr._ |
|  |  |
|  |  |
|  |  |
| 5:25 pm | Cdt. D. Fleming 1-25-08 Falcon-1 D-team |
|  | I recieve (1) beeper #16 (1) set of large and small keys |
|  | (1) bed book (1) log book (1) posted policies (1) poste orders |
|  | read and understood & fulley charge fire extinguisher all |
|  | intact |
| 5:30 pm | made rounds all secure. temp 70° |
| 5:50 pm | Chapel call out |
| 5:55 pm | hobby shop call out & beeper check ok |
| 6:05 pm | made rounds all secure. counted 49 inmates |
| 6:06 pm | Started shakedown on bed #3 Bergeron, Jerome 170254 |
| 6:27 pm | Completed shakedown on bed #3 no fund |

288

OFFICER NAME: Cdt. D. Fl_____    SHIFT: D-team

DATE: 1-25-08

| TIME | OFFICER ENTRY |
|---|---|
| 6:30 pm | made rounds all secure, temp 70° |
| 6:31 pm | trash car call out |
| 7:00 pm | made rounds all secure. counted 50 inmates |
| 7:01 pm | started shakedown on bed #33 Ronald Desdunes 107318 |
| 7:24 pm | completed shakedown on bed #33 0 found |
| 7:30 pm | made rounds all secure, temp 70° + hobby shop |
| 7:31 pm | started shakedown on bed #3 Louis Belford 76617 |
| 7:43 pm | completed shakedown on bed #3 0 found |
| | Major Hinya? making rds. |
| 8:00 pm | made rounds all secure. Counted 50 inmates good w/key off |
| 8:30 pm | made rounds all secure. temp 70° |
| 9:00 pm | made round all secure, Counted 62 inmates 92588 |
| 9:01 pm | started shakedown on bed #33 Ronald Kilsworth 83110 |
| 9:21 pm | Completed shakedown on bxd 33 0 found |
| 9:23d | Cept Conrad, Capt S_____ |
| 9:30 | rounds. |
| 9:30 pm | made rounds all secure, temp 69° |
| 10:00 pm | made rounds all secure. 64 total 16 whites 48 blacks good w/key off. |
| 10:30 pm | made rounds all secure, temp 69° put microwave up Cut lights off |
| | Lt. _____ making rounds (B) |
| 10:47 pm | tier walker call out - (B) |
| 11:00 pm | made rounds all secure. Counted 61 inmates |
| 11:30 pm | made rounds all secure. temp 69° |
| 12:00 Am | made rounds all secure. Counted 61 inmates |
| 12:30 Am | made rounds all secure. temp 69° |
| 12:50 Am | inmate Rickey Banks #61858 and inmate Keeneth Reed 213685 walk in dorm total 63 |
| 1:00 Am | made rounds all secure. Counted 63 inmates good w/key Officer |
| 1:30 Am | made rounds all secure. temp 69° |
| 2:00 Am | made rounds all secure. Counted 63 inmates |
| 2:30 Am | made rounds all secure. temp 69° |

OFFICER NAME: Cdt. D. Fleming          SHIFT D-team

DATE: 1-26-08

| TIME | OFFICER ENTRY |
|------|---------------|
| 3:00 AM | made rounds all secure. Counted (63) inmates |
| | Major Hinja? making rounds. |
| 3:30 AM | made rounds all secure temp 69° |
| 4:00 AM | made rounds all secure. Counted (63) inmates |
| | Cpt. Conrad making rounds. C |
| 4:27 AM | Death row tier worker (01) |
| 4:30 AM | made rounds all secure. Temp 69° |
| | Lt. Tourdre making rounds & central. B |
| 5:00 AM | made rounds all secure. Counted (61) inmates |
| 5:03 AM | inmate Iley Dotch 78118 was called to work (60) inmates |
| 5:07 AM | inmate Jerald Wilson 101472 walk in dorm total (61) |
| | turn over all duties & equipment to relieve officer on B-team |

Cdt D Fleming

Sgt. Leonard Wilson Jr.          Team-B
Falcon 1
| 1-26-08 | |
| 5:25 AM | Initial head count and security check. |
| | Rear exit secure, all secure. Head count |
| | of 62 inmates (cleared). |
| 5:27 AM | I Took over all duties and equipment |
| | from D-Team officer (Fleming). I recieved |
| | Key#035 A, Beeper #16, log book, post |
| | book, MSDS, Posted policies, Post Orders |
| | (read & understood) and two fully |
| | charged fire extinguishers w/pins intact. |
| 5:47 AM | Beeper check. Beeper OK. |
| 6:00 AM | Made rounds. All same. |
| 6:30 AM | Chow call. |
| 68° | Made rounds all secure. |
| 7:00 AM | Made rounds. All secure. |

Date: 1-30-08

On 1-25-08 I Lt. J. Bordelon conducted a shakedown of inmate Erin Hunter #111799 property with Capt Dufour and Cadet L. Wilson Jr. Cadet Wilson was shaking down at the foot of his bed, Capt. Dufour and I were shaking down at the head of his bed where the contraband was found in his property box.

This is for your information.

Lt. Jordan Bordelon
Falcon Hall Officer
B-Team

RECEIVED

JAN 3 0 2008

DISCIPLINARY
Louisiana State

1·25·08

I cadet Leonard Wilson, Jr. was conducting a shakedown with Captian Dufour and Lt. Borderlon. I was at the foot of the bed shaking down his laundry bag. I cadet Leonard Wilson, Jr. was unaware that Cpt. Dufour and Lt. Borderlon found a home made hand cuff key in his locker box at the head of his bed. I cadet Wilson found nothing in his laundry bag.

Leonard Wilson, Jr.

RECEIVED

JAN 3 1 2008

DISCIPLINARY OFFICE
Louisiana State Penitentiary

"Exhibit E"

## LEGAL PROGRAMS DEPARTMENT
## DISCIPLINARY BOARD

TO:        CAMP D/DISCIPLINARY BOARD
FROM:    OFFENDER, Erin Hunter #111799
DATE:     2/1/2008
RE:         Motion for copy of evidence to have the attorney , Ms. Terri Cannon Present
              during deliberations to observe the proceedings.

### MOTION FOR A COPY OF THE EVIDENCE (HANDCUFF KEY)
### AND TIME TO  PREPARE A DEFENSE;
### RE-URGE MOTION FOR PRESENCE OF ATTY. MS. TERRI CANNON

**DISCIPLINARY BOARD MEMBERS:** We  RE-URGE our motion to have Attorney Terri
Cannon present during the deliberations in this matter, regarding Inmate Counsel Erin Hunter
#111799.
In support, Offender would respectfully show the Board the following:

We  RE-URGE our Motion to request the presence of Attorney Ms. Terri Cannon at this hearing,
due to allegations of  Past retaliation, harassment, and intimidation and (Now falsification of
documents) regarding  the Inmate Counsels assigned to Camp D, Law Library.  The accused
contends that the presence of Ms. Cannon, atty. At law will insure a fair due process hearing. A
thorough investigation into this matter will reveal that Inmate Hunter was written up for retaliation
by  the officer who the Inmate counsel complained about.  Officer Wilson wrote in his Falcon-1
log book that nothing was found, but was later coerced into writing a letter to state that he didn't
know that the alleged hand cuff key was found.  The log book on Falcon Hall also stated that
nothing was found.  However, Lt. Bordelon was also coerced into writing a letter to state that he
found the handcuff key along with Capt. Duford.   .  Thus Inmate Hunter feel that this is a serious
matter that needs to be further investigated and  observed by the Attorney.

MOTION GRANTED [ ]  DENIED [X ]

REASONS:    Unduly burdensome on the institution

BOARD CHAIRMAN:      Mjr. Richardson

BOARD MEMBER:         Amy Dysart GSW

Exhibit "E"

## DISCIPLINARY BOARD

TO:        CAMP D/DISCIPLINARY BOARD
FROM:      OFFENDER, Erin Hunter #111799
DATE:      2/1/2008

RE:        Motion for copy of The Falcon Hall Log book, of 1/25/08 between 5:30 a.m. and
           5:30 p.m., and a copy of the evidence (handcuff key) to be presented at the hearing.

## MOTION FOR A COPY OF THE LOG BOOK FROM FALCON HALL
## AND A COPY OF THE ALLEGED EVIDENCE (HANDCUFF KEY)

 We respectfully make a motion for a copy of Falcon Hall Logbook, of 1/25/08,   between the hours
of **05:30 am** and **5:30 p.m.**  This logbook was in the possession of Lt. Bordelon during this time.
A review of the logbook that was in his possession will show that he wrote in the logbook that
nothing was found during the shakedown of Inmate Erin Hunter.  We make this motion because
Lt. Bordelon has written a statement saying that he found a handcuff key, which is inconsistent
with what he wrote in the logbook. A review of the logbook will show that Lt. Bordelon has given
false information in response to an investigation which subjects him to Malfeasance in office, in
violation of **La. R.S. 14:134** et. seq.  and Injuring public records, in violation of **La. R.S. 14:132.**
He is  also in violation for Filing or Maintaining False Public Records, in violation of   **La. 14:133.**


MOTION GRANTED [ ]  DENIED [X]

**REASONS:**    Unduly burdensome on the institution


The accused also motion to be provided with a copy of the alleged evidence (homemade handcuff
key)

MOTION GRANTED [ ]  DENIED [X]

**REASONS:**    Refuse to prolong hearing process (listen to tape)


**BOARD CHAIRMAN:**      Mjr. Richardson

**BOARD MEMBER:**      Amy Dysart GSW

"Exhibit F"

Exhibit "H"

## APPEAL FROM THE DISCIPLINARY BOARD

APPELLANT: Erin Hunter #111799                    DATE OF REPORT: 1/25/08

ORIGINAL CHARGE: Rule 1                           DATE OF HEARING: 1/29/08; 1/31/08; 2/1/08

CHARGE FOUND GUILTY OF: Rule 1                    LOCATION OF HEARING: CAMP D. HAWK.

BOARD MEMBERS:  K. Dupuis, Lt. COL.&              SENTENCE: Camp D. Raven
                Candice Brecheen CCO
                Mjr. W. Richardson &
                Amy Dysart, G.S.W.               SENTENCE IMPOSED: yes.
COUNSEL: James Matthews #323455
                                                 PLEA: Not Guilty

---

### ISSUES

1.        Was the appellant's Due Process and Civil Right violated when Capt. Joseph Duford  fabricated write-up stating that he found a  Handcuff key in Inmate Erin Hunter's locker box, as an  act of retaliation based on orders given by Lt. Col. Sterling,  because the appellant  wrote to Asst. Warden Delaney and requested an informal resolution to the intimidation and harassment of Camp D, Inmate Counsels, by Lt. Col. Sterling, because they filed motions for other inmates during Disciplinary Court Hearing,  after being told not to do so by Lt. Col. Sterling?

2.        Did the disciplinary board error and  was  the appellant's Due Process and Civil Rights violated  and was he denied a  fair  hearing,  when the Camp D, Disciplinary Board  denied appellant's Motion for a copy of the Log Book that  was  kept by Lt. Bordelon, after a statement was written by Lt. Bordelon contradicting what he wrote in the Log book?

3.        Was the Appellant denied a fair hearing when he was denied the right to an investigation from the Out-Camp Warden, or investigative services?

4.        Was the action of Captain Joseph Duford a violation of appellants Due Process and Civil Rights and did his actions display Malfeasance in office, Filing or Maintaining False Public Records, retaliation, and injuring Public records in his official capacity?

5.        Was the action of Lt. Jordan Bordelon a violation of appellants Due Process and Civil Rights and did his actions display Malfeasance in office, Filing or Maintaining false Public Records, and injuring Public records in his official capacity?

6.        Was the appellant given an excessive sentence in light of his good conduct record, and other positive issues that should reflect on the sentence imposed.?

### FACTS & HISTORY:

B.        On 1/14/08 Inmate Erin Hunter wrote to Asst Warden Delaney and requested an Informal resolution to the harassment, intimidation tactics being applied  by Lt. Col. Harold Sterling  against the Camp D, Inmate

1

Counsels. A review of the Camp D, Inmate Counsels records will reveal that prior to 5/11/07 they were all practically free of write-up for several years. However, immediately prior to 5/11/07 Lt. Col. Sterling had issued an order to the counsels to stop making motions during Disciplinary Court proceedings. He also turned the tape off during the proceedings on 5/11/07. When Inmate Counsel Ralph Stogner advised Lt. Col. Sterling that it was his understanding that he was not suppose to turn off the tape during the proceedings, Lt. Col. Became irate. On that same date all the inmate counsels were written up for various rule 1, & rule 17, violations, for having items in the Legal Aid Office that were previously approved items, and the rule 17 violation involved the removable drawer dividers which is the way the desk is designed. Lt. Col. Sterling ordered his subordinates to write us up and he held court on us and served as the Board Chairman. He told us that if we did not plead guilty and take a plea bargain for a suspended sentence he would take our trustee status for those who were trustees; He threatened another counsel with a transfer to the working cell block and threatened to take various privileges from the other counsels. When we tried to explain to him that the rule 1, and rule 17 were bogus write-ups for having items that were purchased from the store and tried to show him our store receipts, he stated that he didn't care about that, if we didn't take the plea deals we could fight the sanctions on appeal.

When we reported the matter to Asst. Warden Lamartiniere, he held a meeting with all the counsels and Lt. Col. Sterling was present. He advised us in the presence of Lt. Col. Sterling that we were allowed to make motions and the proper procedure for the Board Chairman was to Grant or deny the motion. However, if the motion was denied the Board Chairman was obligated to give a reason for dis denial. It should also be noted that their had been a few recent instances at Camp D, where re-hearings were granted because the Chairmen at Camp D, were denying Motion in D/B court without giving reasons for the denial. [1] (See exhibit _____)

B.    On 1/12/2008 all the Inmate Counsels were given Disciplinary write-up's a second time for having items in the office that we had previously been told we could have in our possession. As stated in the investigation report we were shook down and written up by D-Team Security (Mjr. Hinyard, Capt Conrad, Capt. Smith and Lt. Cole). We also took a plea agreement to a lesser charge of unauthorized items to avoid further prolonging the inevitable. Though the report stated that an excessive amount of cigarettes, stamps, canteen goods and personal clothing were found, the only item listed in excess was a few postage stamps above the authorized limit that had been in Inmate Hunter's possession for several years. In fact some of the stamps value was .32 cents. It should also be noted that Inmate Hunter was not given a confiscation slip for the stamps that were confiscated and they were never returned. (See exhibit _____)

## POINTS OF INTEREST

1.    The officer who was working in the Dormitory noted in the log book that nothing was found during the time Inmate Erin Hunter was searched. Therefore, it appears obvious that the handcuff key that Capt. Duford wrote him up on was not found in Hunter's property. The handwritten notes attached to the investigation is an attempt to cover-up the fact that Capt. Duford fabricated the report.

---

[1]/ A complete synopsis of the history of the problems Camp D, Counsels have been experiencing is attached for your review, which should give a more clear picture to show that the retaliation, harassment, and intimidation tactics are related to the Inmate Counsels doing the job assigned to them as Inmate Counsels. A further review will also show that the intimidation tactics are as a result of orders given by Lt. Col. Sterling to his subordinates. When Mjr. Hinyard shook our office down and ordered us to remove everything from the office he stated that he was ordered to do by his superiors. His Superior was Lt. Col. Sterling. Whom he relieved.

2.  The Disciplinary Board denied the appellant the right to a fair hearing when the Board denied him the right to a copy of the log book kept by Lt. Bordelon, during the time period of the incident in question, especially in light of the fact that new information was introduced during the investigation, in the form of a statement by Lt. Bordelon.

3.  The Appellant was denied a fair hearing when he was denied the right to an investigation from an independent party in this matter.

4.  The action of Captain Joseph Duford violated appellant's Due Process and Civil Rights and his actions displayed Malfeasance in office, Filing or Maintaining False Public Records, Retaliation, and Injuring Public records, all in his official capacity.

5.  The action of Lt. Jordan Bordelon violated appellant's Due Process and Civil Rights and his actions display Malfeasance in office, Filing or Maintaining False Public Records, and Injuring Public records, all in his official capacity?

6.  The appellant was given an excessive sentence in light of his good conduct record, and other positive issues that should be considered when the sentence was imposed.

7.  The granting of a lie detector test of the appellant and/or the accusers would show that the accusers fabricated the report and were untruthful in their statements introduced during the investigation.

8.  The time on the report of 05:50 a.m. and the Log Book statement of 05:55 a.m, stating that nothing was found during the shake down, are in conflict.

## CONTENTS OF THE REPORT:

On the above date and time, I Capt Duford shaking down in Falcon-1 shook down inmate Erin Hunter 111799 found a Home made Hand cuff Key in his locker box. Major Mock notified. The date of the report is 1/25/08; the time of the report is 5:50 a.m.

## ACTION OF THE CAMP D. DISCIPLINARY BOARD

On 1/29/08 inmate Erin Hunter appeared before the Camp D, Disciplinary Board (D/B) and pled not guilty to the report on a Rule #1 violation. Counsel made a motion to investigate and produce a copy of Camp D, Falcon-1 log book entry of 5:55 a.m. on 1/25/08. He alleged that the log book would show that nothing was found during the shake down of Erin Hunter. The accused further requested that the investigation be sent to Investigative services, or to Asst. Warden J. Lamartiniere, to insure a fair and impartial investigation. The accused further requested to take a lie detector test at his own expense, and he requested that a lie detector test to be administered to the reporting officer, and Cadet Williams who wrote in the log book that nothing was found while shaking down Inmate Hunter. The accused also requested the presence of Atty. Terri Cannon during all proceeding in this matter to insure a fair and impartial hearing. He also requested that the report be dismissed for insufficient evidence. This was the first hearing in this matter.

The Board granted petitioner's motion to investigate and obtain the Falcon-1 log book, but denied all other motions.

On 1/31/08 The accused appeared before the Disciplinary Board (D/B) a second time and was deferred for a copy of the investigation report.

On 2/1/08 a copy of the investigation report , was given which included a copy of the Falcon-1 log book and two letters. (1) from Lt. Jordan Bordelon and (1) from Cadet Leonard Williams. The accused re-urged his motion to have atty. Terri Cannon present during deliberations in this matter. (See attached). He suggested that the presence of Atty. Cannon would assure a fair hearing . He further suggested that Lt. Bordelon's log book would show that nothing was found during the shake down of Inmate Hunter.

The log book from Falcon-1 of 1/25/08 Confirmed that Cadet Williams stated: " 5:55 A.M. shake down Erin Hunter, **upon orders of Capt. Duford and Lt. Bordelon, Nothing found.** His log book indicates that he shook down Inmate Hunter alone.

The statement from Cadet Leonard Williams is entirely different from what he wrote in his log book. His log book stated that he shook down Erin Hunter, <u>upon orders of Cpt. Duford and Lt. Bordelon, Nothing found.</u> Later his later statement introduced during the investigation implies that they were all shaking down at the same time, which is inconsistent with what he wrote in the log book. Lt. Bordelon's statement implies that he shook down simultaneously with Cadet Williams and Capt. Joseph Duford, and he and Capt. Duford found the hand cuff key, which is inconsistent with Cadet's Williams' logbook, and neither Lt. Bordelon nor Capt. Duford stated that they told Cadet Williams they found a hand cuff key.  This information did not surface until after they discovered that Cadet Williams had written  in the logbook that he shook down Inmate Hunter (alone), upon orders of Capt. Duford and Lt. Bordelon and found nothing.  The facts discovered during the investigation were sufficient to find inmate Hunter not guilty. (<u>The statement in the log book, specifically  implies that Cadet Leonard Williams shook down Inmate Erin Hunter alone</u>). **(see copy of log book from 1/25/08).  (see specifically  05:55a.m. entry).**

When the accused appeared before the board on 2/1/08 he made additional motions for a copy of the logbook that was kept by Lt. Bordelon on Falcon Hall. He based his motion of the fact that additional information was introduced when Lt. Bordelon and Cadet Williams wrote their (2) statements. He re-urged his Motion to have the Atty. Present.  He also made a Motion to Produce a copy of the evidence (Handcuff key).  All motions were denied.  The reasons given for denying the motions were insufficient and not in compliance with the Disciplinary Rules. And procedures. Lt. Bordelon's bed book would show that another inmate was moved into inmate hunter's bed before he was adjudicated guilty on the offense.  This tends to show that Lt. Bordelon was told that Hunter would be found guilty regardless of the facts and circumstances surrounding the incident.

At the conclusion of the hearing on 2/1/08 Inmate Hunter was found guilty and sentenced to custody change to Camp D, Raven working cell block.

<div align="center"><u>ARGUMENTS</u></div>

<u>DUE PROCESS / EQUAL RIGHTS VIOLATIONS</u>

Appellant Erin Hunter proffers that he was denied Due Process when the Disciplinary Board learned that the reporting officer fabricated the report and extended their investigation to get  statements to cover-up the fact that nothing was found during the shakedown of Inmate Erin Hunter.

Inmate Hunter's Due Process and  Equal  Rights were violated when he was treated differently  than  other inmates, similarly situated, when an  investigation of alleged violations cleared  them from wrong doing, their report are dismissed. However,  in  Hunter's  case,  when the investigation report  exonerated  Inmate Hunter, the Board added new information by introducing false statements  to justify the  false report, and further denied his Due Process rights when they denied him a motion to further investigate to prove the statement  by Lt. Bordelon and Cadet Leonard was falsified and inconsistent with

4

what they wrote in their log books. (Copy of their statements are part of the record in this case, as well as a copy of the log book).

It should also be noted that Inmate Hunter's bed was assigned to another Inmate before he was found guilty by the D/B Court. Capt. Whittaker gave Hunter's bed to Alonzo Ford on 1/28/08, and he was not adjudicated guilty until 2/1/08. Thus it appears his fate was predetermined.

The investigation into this matter states that Camp D, Security received information that some of the inmates counsels were dealing unauthorized items and canteen items for cigarettes and stamps. Based upon that information, an investigation was ordered. The items found in the legal aid office were mostly items that had been purchased from the canteen by the inmate counsels who work in the legal aid office. An audit of the inmate counsel's accounts will show that most of them receive money from outside sources on a regular basis and will also reveal that they all purchase canteen items on a regular basis. The few unauthorized items can be reasonably explained, if necessary. However, we all accepted the plea agreement to suspended sentences to avoid getting stiffer sentences, because we are aware that our ability to defend the allegations were limited due to the board's failure to grant a full an fair investigation where we would be able to prove our claim. Also as can be seen in the instant case, even if we prevail in proving the disciplinary write-up was fabricated, additional information is added to further cover up the truth.

When we were shook down by D-Team Security (Major Hinyard and his team, we were told that they were told to shake us down because it was normal procedure, and no mention was made in the write-up about receiving information or dealing in unauthorized items for cigarettes.

It should also be noted that the allegations of Inmate Hunter did not surface until he requested an informal resolution to the harassment and intimidation tactics used by Lt. Col. Sterling, because the Inmate Counsel's were making motions in D/B Court.

Inmate Hunter specifically requested the Asst. Warden for an informal resolution to the matter, before he filed a formal complaint, and he also requested that there be no retaliation for his actions. (See copy of Letter in record)

It is our understanding that Warden Burl Cain wanted the Inmate population to request an informal resolution from the Asst. Warden in his area before filing a formal complaint. Thus, Inmate Hunter was only following the procedure that had been previously outlined and discussed with him, as inmate counsels were told to follow and advise the inmate population to follow before filing formal complaints. However, after seeing the results of following these procedures and instructions, it appears to be bad protocol.

It should also be noted that the inmate counsel problems derived from an incident that occurred prior on 5/11/07, before Inmate Hunter became a counsel at Camp D. (See copy of synopses Dated 5/11/07 1/12/08 and 1/25/08 attached.) Appellant has chosen to attach these synopsis to avoid an excessive page length on his appeal. (See attached summary).

The Appellant was denied a fair hearing when he was denied the right to an investigation from an independent party in this matter, because it is evident that the officers who set Inmate Hunter up and fabricated the report were coached in what to say to cover up their sloppy work during the set-up of Inmate Hunter.

The mere fact that Capt. Joseph Duford wrote the report at 5:50 a.m. stating that he found a home made handcuff key five-minutes before the 5:55 a.m. entry in the log book stated that nothing was found is sufficient to undermine the statements made by Lt. Bordelon and Cadet Williams. When the D/B Court granted the investigation and learned that nothing was found Capt. Duford's supervisors hade to come up with a plan to cover up the fact that he fabricated the report.

The action of Captain Joseph Duford and Lt. Jordan Bordelon violated appellant's Due Process and Civil Rights and their actions displayed Malfeasance in office, Filing or Maintaining False Public Records, Retaliation, and Injuring Public records, all in their official capacity.

Cadet Leonard Wilson was honest when he wrote that nothing was found during his shakedown, but his statement is incriminating, because it contradicts what he wrote in his log book.

The rehearing with the granting of a lie detector test of the appellant and the accusers would show that the accusers fabricated the report and were not truthful in their statements introduced during the investigation.

A review of the tape of 2/1/08 will show that the appellant attempted to notify the board to preserve the record from these proceedings, but the Lap top/tape operator (Amy Dysart) turned the computer off before the hearing was complete. (Please review). ( This is another example of the denial of a full and fair hearing).

**EXCESSIVE SENTENCE**

The appellant submits that his sentence was excessive, in light of his good conduct record, and a rehearing should be ordered for reconsideration of his sentence due to the excessive nature of his sentence. The Disciplinary Rules states that Sentences must fit the offense.

A review of the accused' record will reveal that he has a good conduct record, compared with other inmates similarly situated, considering the time served and he does not fit the category of those who habitually violate the rules. He is also a hard working inmate at his job and is extremely competent as an inmate counsel and he deserves a more lenient sentence.

**RELIEF DESIRED**

**WHEREFORE**, appellant seeks a a reversal and dismissal of the entire findings and to be restored to his former custody status and job with compatible living quarters. Further, in light of the decision of the Louisiana Court of Appeal, First Circuit in the matter entitled, **Webb v. Whitley**, 623 So. 2d 165 (La. App. 1 Cir. 1993), should the Board dismiss this matter, Appellant respectfully moves that this matter be expunged from his Disciplinary Records and Master Prison Records.

Respectfully submitted

Erin Hunter

Erin Hunter #111799
Camp D, Hawk Raven 2-R-5

DATE: 2 /11 /2008

Cc:    Camp-D Legal Aid Office
       Erin Hunter #111799

6

EXHIBIT "I"

**LOUISIANA STATE PENITENTIARY**
**ANGOLA, LOUISIANA**

## DECISION REGARDING APPEAL OF DISCIPLINARY ACTION

### APPEAL NUMBER:  LSP-2008-0116-W

| | | |
|---|---|---|
| INMATE'S NAME: | ERIN HUNTER | 111799 |
| HOUSING ASSIGNMENT: | D RAV 2/R | |

| | |
|---|---|
| DATE OF REPORT: | 01/25/2008 |
| DATE OF HEARING: | 02/01/2008 |
| ORIGINAL CHARGE: | RULE #1, CONTRABAND |
| PLEA: | NOT GUILTY |
| CHARGE FOUND GUILTY OF: | RULE #1, CONTRABAND |
| SENTENCE: | CUSTODY CHANGE TO MAXIMUM (WORKING CELLBLOCK) |
| IMPOSED OR SUSPENDED: | IMPOSED |

| | |
|---|---|
| DATE OF APPEAL DECISION: | |
| DECISION: | DENIED |

Appellant was issued a disciplinary report on 01/25/2008 for a violation of Rule #1, Contraband. Appellant was provided a hearing by the Disciplinary Board on 02/01/2008 and was found guilty. Appellant received a sentence of a custody change to maximum (working cellblock).

Appellant argues on appeal that the report was fabricated, that the board erred in denying his motion to defer the case for investigation and for a copy of the logbook, and that the sentence is excessive.

Appellant presented no evidence to substantiate his claim that the report was fabricated. The Disciplinary Board has the discretion to grant or deny any motion raised during the course of the hearing. In this instance, the Board ruled on the motion and provided appropriate reasons for the ruling. There is nothing to indicate that the Disciplinary Board abused its discretionary authority in this case. The Disciplinary Board found that the reporting employee's account of the incident along with the investigation appropriately supported the charge and provided sufficient evidence to warrant the guilty verdict. The Disciplinary Board's decision is deemed appropriate as to the finding of guilt. The sentence imposed falls within the sentencing guidelines specified in the DISCIPLINARY RULES AND PROCEDURES FOR ADULT INMATES for the violation. The sentence is not excessive nor unduly harsh.

The issues raised by Appellant in this matter have been reviewed and found to be without merit. Appellant was provided a due process hearing by the Disciplinary Board. The decision of the Disciplinary Board is deemed appropriate. Appellant has presented nothing which would justify reversal or modification of the decision rendered through the disciplinary proceedings.

The appeal is denied.

Burl Cain
Warden

BC:dld

---

**INSTRUCTIONS TO INMATE:** If you are dissatisfied with this decision, you may appeal the decision to the Secretary of Corrections in accordance with the procedures defined in DISCIPLINARY RULES AND PROCEDURES FOR ADULT INMATES. The Secretary will only consider appeals from decisions which resulted in the imposed or suspended sentences of one or more of the following penalties: 1) Isolation; 2) Loss of Good Time; 3) Custody Change from Minimum to Medium only if it involves transfer to another institution; 4) Custody Change from Minimum or Medium to Maximum Custody; or 5) Restitution. If you wish to appeal this decision to the Secretary, indicate your desire to appeal on the line below, date and sign the document and return the yellow copy to the DISCIPLINARY APPEALS OFFICE within five (5) days of receipt of this decision.

☑     I am not satisfied with this decision and wish to appeal to the Secretary.

DATE: March 27, 2008      INMATE'S SIGNATURE: Erin Hunter





BOBBY JINDAL
Governor

JAMES M. LE BLANC
Secretary

# State of Louisiana
## Department of Public Safety and Corrections

### DISCIPLINARY BOARD APPEAL

| | |
|---|---|
| **Appeal Number:** | LSP-2008-0116 |
| **Inmate's Name:** | ERIN HUNTER, #111799 |
| **Inmate's Counsel:** | MATTHEWS |
| **Board Chairman:** | RICHARDSON |
| **Rule Violation:** | 01/25/2008 |
| **Disciplinary Board Action:** | 01/29; 01/31; 02/01/2008 |
| **Appeal Decided:** | APR 1 6 2008 |
| **Decision of the Secretary:** | 01-DENIED      **Inst:** LSP |

The inmate was convicted of violating Rule #1 (Contraband) resulting in a sentence of Custody Change to Maximum – Extended Lockdown.

On appeal, the inmate claims the report was fabricated, was written in retaliation and his due process rights were violated. The inmate also claims that his motions were denied by the Board, his sentence is excessive and an inmate, who received a similar disciplinary report, had his report dismissed.

We have considered the appellant's argument and the decision rendered by the Warden. Upon review, we find the disciplinary report to be clear, concise and to provide convincing evidence of the violation as charged. The inmate has not provided any evidence within this appeal to refute the charge or to substantiate his claim that the report was fabricated or written in retaliation. The officer's eyewitness account of the incident along with the investigation report provides sufficient evidence for the finding of guilt. Each hearing is conducted on an individual basis, making another inmate's sentence irrelevant to this hearing. The inmate was provided with a full hearing and was afforded due process in both the hearing and the sentencing phases of the proceeding. Based on the seriousness of the offense, the sanction imposed was appropriate. For the forgoing reasons, we agree with the decision of the Disciplinary Board and the Warden.

Appeal is Denied.

*James M. LeBlanc*
James M. LeBlanc, Secretary
Public Safety and Corrections

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2008 -0912

TO:  ERIN HUNTER 111799                          CP. D RAV. 2/R
      Offender's Name and Number                  Living Quarters


                    03/25/2008
                  Date of Incident


X                    ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                     issued within 40 days of this date.

                     REJECTED:  Your request has been  rejected for the following reason(s):



_____04/14/2008_____                  _____Trish Foster_____
              Date                              Warden's Signature or Designee



Exhibit P

CASE NUMBER: LSP-2008-0912

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: <u>HUNTER, ERIN 111799</u>                    <u>CP. D RAV. 2/R</u>
                                                          Living Quarters

Response to request dated 03/25/2008, received in this office on 04/02/2008

In your letter of complaint dated March 25, 2008, while housed at Camp D, you state that Colonel Harold Sterling told you and the other inmate counsels not to file any motions in his court. Colonel Sterling denies your allegations and further stated that he informed the inmate counsels that all motions would be in writing. You further state that Colonel Sterling ordered Camp D Supervisors to shake down the Legal Aid Office as a form of a harassment. Colonel Sterling stated that he received information that the inmate counsels were selling their services for canteen items. The Legal Aid Office was searched and a large amount of cigarettes, stamps, and other canteen items were found. Institutional records reflect that on January 12, 2008 you, as well as the other inmate counsels, were issued a disciplinary report for unauthorized items. Records further reflect that on January 16, 2008 you appeared before the Disciplinary Board, you were found guilty and sentenced accordingly. You further state that Colonel Sterling and Captain Dufour falsely accused you of being in possession of a homemade hand cuff key. Colonel Sterling stated that information was received that indicated you had a handcuff key that you were trying to sell. Both Colonel Sterling and Captain Dufour stated that based on this information, they, along with Lieutenant Jordan Bordelon and Cadet Leonard Wilson searched your locker boxes and discovered a homemade hand cuff key in your locker box. Institutional records reflect that on January 25, 2008 you were issued a Disciplinary Report for contraband. Records further reflect that on February 1, 2008 you appeared before the Disciplinary Board, you were found guilty and sentenced accordingly. No evidence is found to support your allegations.

Your Request for Administrative Remedy is Denied.

Prepared by: _____
                    Tim Delaney/AWII/cmh

Approved by: _____
                     Joe Lamartiniere/AWIII/tlb

_____          _____
                Date                                          Unit Head

Exhibit "O"

Instructions to Inmate:  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

(  ) I am not satisfied with this response and wish to proceed to Step Two.

Reason:
The answer is misleading and deceiving and my complaint is self explanatory. Selling legal services were trumphed up allegations that was devised after our complainting about the harass- ment.

June 18, 2008

_____
Date

Orin Hunter # 111799

_____
Inmate's Signature    DOC#

Exhibit "R"

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER:  LSP-2008-0912

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: <u>HUNTER, ERIN    111799</u>                    <u>LSP</u>
        Inmate Name and Number                              Living Unit

Response to Request Dated 06/18/08, Received in this Office on 06/26/08:

Your request for Administrative Review of your ARP # LSP-2008-0912 has been received.  A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

It has been determined, after a thorough review of all pertinent documentation, that your request has been satisfied.  The response provided is clear and concise, as well as has addressed your request appropriately.  As such, this office concurs with staff and finds no further investigation warranted.

Your request for relief is denied.

<u>   6/30/08   </u>                                    <u>   Linda Ramsay   </u>
              Date                                            Secretary's Signature or His Designee

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2008 -0912

TO:  <u>ERIN HUNTER  111799</u>                    <u>CP. D RAV. 2/R</u>
        Offender's Name and Number                    Living Quarters


            <u>03/25/2008</u>
            Date of Incident


            ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
            issued within 40 days of this date.

X                        REJECTED:  Your request has been  rejected for the following reason(s):
                                    LETTER 8



_____<u>04/14/2008</u>_____                    _____Trish Foster_____
                Date                                            Warden's Signature or Designee



Exhibit "K"

"This is a request for Administrated Remedy"
March 25, 2008

To: Warden Burl Cain
From: Inmate Erin Hunter #111799

Dear Warden Cain,

This is a matter that you should be fully aware of because I wrote you and Deputy Warden Darryl Vannoy on February 1, 2008 asking for you and Deputy Warden Vannoy intervention on a serious security breach that can possibly result to a loss of jobs, demotions, criminal convictions and civil violations and damages. To ensure that you and Deputy Warden were in receipt of my letters, I had my brother Bryce Hunter mailed them certified.

The latter was intended to put you on notice what was going on in Camp D with security harassing, threatening and intimidating inmate counsels, and how I was retaliated against when I complied with your policy of first seeking a solution through informal means but was setup with allegedly having a home made handcuff key days later by the same security officer who I complained about.

As of this day, I have never heard from you, Deputy Warden Vannoy, Camp D Asst. Warden Tim Delaney or Legal Programs Director, Ms. Trish Foster, the two of whom I sent the complaint to.

Therefore Warden Cain I am left with no other alternative but to file this grievance.

On January 14, 2008, I started writing an informal complaint to Camp D Unit Head, Asst Warden Tim Delaney and Legal Programs Director, Ms. Trish Foster, who was my supervisor at the time, concerning Lt. Col. Harold Sterling and his subordinates harassing, threatening and intimidating the inmate counsels at Camp D

1.

for effectively doing their jobs as inmate counsels. Though the complaint is dated for January 14, 2008, it was not actually completed to until January 17, 2008 when which was the date I sent one to Asst. Warden Delaney and a copy to Ms. Foster. Days later, on January 25, 2008, I was framed by Lt. Col. Sterling who ordered his subordinate Capt. Joseph Dufour to write me up on a disciplinary report falsifying that he found a home made handcuff key in my dormitory locker box.

Facts of informal initial complaint sent to Asst. Warden Delaney and Ms. Trish Foster:

Lt. Col. Sterling's harassment and intimidation of the inmate counsels here at Camp D started with former inmate counsel Dwight Bell. In the month of May 2007, Bell filed a number of motions for a client in DB. Lt. Col. Sterling was the chair man of the Board. After the hearing, Lt. Col. Sterling told Bell not to file any more motions in his court. He then called inmate counsel coordinator James Matthews to his office and told him to tell all inmate counsels not to file any more motions in court and Matthew did what Lt. Col. Sterling directed. Bell was caught in a catch 22 when one of his clients demanded that he file motions and he did. This was the beginning of Lt. Col. Sterling rage against inmate counsels.

The following week, on May 16, 2007, inmate counsel Ralph Stogner went before Lt. Col. Sterling representing inmate Antonio Bosley. In the middle of hearing, Lt. Col. Sterling cut off the tape recorder and ordered Stogner and Bosley out of the court room. When they were called back in, Stogner reminded Lt. Col. Sterling that he was not suppose to cut the tape off in the middle of the hearing. After the hearing Lt. Col. Sterling again called inmate James Matthew to his office and told him that Stogner was a damn inmate and he cannot tell him

2.

what to do. This same day Lt. Col. Sterling ordered his se-
curity officers to shake down the inmate counsels office
and to write them up.

At approximately 10:30 a.m. Camp D security officers came
into the Legal Aid's office and ordered the counsels to go to
their dormitories. Security then demolished the office
beyond recognition. They threw the counsels food items in
the middle of the floor in one big pile and took pictures
of the wreckage. Thereafter, all the counsels were
written up for rule infractions.

The next day the harassment and intimidation from Lt.
Col. Sterling was brought to Asst. Warden Sae LaMartinere
attention. Asst. Warden LaMartinere made it clear to
Lt. Col. Sterling that it was inmate counsels job to file
motions. More discussion took place behind close doors becaus
inmate counsels were not harass anymore ~~and during that~~
during Asst. Warden LaMartinere tenure.

However, on May 15, 2007, when the inmate counsels went
to DB court on the above rule infractions, Lt. Col. Sterli
who was the chairman, gave each counsel an ultimatum
to plead guilty to 30-days suspended sentence, or, as to
inmates Matthews and Robert Swift lose their trustee
status, and to inmate Bell, working cellblocks. Under
duress they accepted the plea bargain.

On January 11, 2008, Lt. Col. Sterling struck again.
Asst. Warden LaMartinere was promoted to another
position and we no longer had his protection. Lt. Col.
Sterling ordered the night security, Major Hinyard and
Capt. Suan Conrad to shake down the Legal Aid office.
Again, our office was demolished and we were written
up for rule infractions. Pictures were taken of the
after effect of the search. Both Major Hinyard and
Capt. Conrad told us afterwards Lt. Col. Sterling ordered

3.

it.

We (the inmate counsels) thereafter sought a meeting with Camp D new Asst. Warden Tim Delaney. We informed him of Lt. Col. Stering's harassment and how he was intimidating us. He said he was going to take care of the problem.

On January 12, 2008, Major Hinyard called inmate Matthews outside on the walk. He told Matthews that his days was numbered for telling Lt. Col. Sterling that he broke a computer key board during to search and lost an inmate legal document. It is obvious that Lt. Col. Sterling threw a cross. Earlier that day, after the search, Matthews went to Lt. Col. Sterling's office and told him that a key board got broke and an inmate document was lost after the search. Never once did he accused any particular officer for destroying or lossing the above.

On January 15, 2008, while en route to the dorm, Captain Bradley, of D-Team, singled me out and told me that he was giving me a warning. That my head is already on the chopp black — that I better not breath heavy or else I am gone. This encouraged me to complete my informal complaint. In hope of getting a peaceful solution to the mess Lt. Col. Sterling has stirred.

Shortly after Asst. Warden Delaney and Ms. Foster received my complaint, Capt. Bradley warning came to light. For no reason mentioned in the disciplinary report, Capt. Joseph Dufour came to my dorm, shook my locker box down and found a home made handcuff key. Of all the possible frameups in the world why would they use a home made handcuff key when I am in general population? And where did I get this

40.

alleged handcuff key from or made it at?

Lt. Col. Sterling's rational actions to do me wrong after hearing about my complaint caused him and his subordinates to make serious mistakes. Only the works of God could have made this revealing. Normally wrong doing of this magnitude is inconspicuous when facilitated with careful planning.

On January 25, 2008, at 5:55 a.m. Cadet Wilson went in Falcon-1 official log book, per orders of Capt. DuFour and Lt. Jordan Bordelon, he shook Erin Hunter down and found nothing.

Five minutes before the above search on the same morning, Capt. DuFour wrote in his disciplinary report that he came in Falcon-1 dormitory and shook Erin Hunter locker box down and found a home made handcuff key. Apparently, he forgot to tell Cadet Wilson that he was already in the dorm and found a handcuff key.

Furthermore, we know that a home made handcuff key in the possession of an inmate warrant no less than Camp J because of the seriousness of the secur risk involved. Why did I go to the blocks?

To make matters even more troubling to me, I wa allowed to roam the dormitory under no strenuous security supervision from the time of the allege search until I was locked up in Hawk dungeon at 8:00 a.m.

Within a week, I was found guilty and sentenced to Camp D Raven working cellblocks. It is obvious that Asst. Warden Delaney want to continue punishing me for filing a complaint against @ Lt. Col. Sterling.

In my complaint to Asst. Warden Delaney and Ms. Foster, I clearly asked not to be retaliated against directly or indirectly for seeking a peaceful solution to

3.

Lt. Col. Sterling harassment. In addition, I specifically reserved my right to file grievance.

Because Asst. Warden Delaney and Ms. Foster showed deliberate indifference when they had prior knowledge of Lt. Col. Sterling's wrong doing and failed to intervene upon request, whereby allowing it to escalate to a security breach that can possibly result into criminal charges of filing and maintaining false public records, injury to public records and malfeasance in office, solely to cause me harm and to injure my comfort in a normal prison life in the prison general population by subjecting me to the harsh punishment of a working cellblock where I am forced to work in the prison farm line in an open field under the watchful eyes of armed prison guards on horses and being forced to urinate and defecate on and near the same vegetables we, the inmate population, are forced to eat, merely because I exercised my 1st. Amendment right to file grievance.

On March 11 and 24, 2008, Raven 1 and 2 side was called out to work in the field. By me taking high blood pressure medication and fluid pills, I urinate more than the average person.

On March 11, 2008, I was forced to defecate near the greens we were picking. I also urinated two consecutive times.

On March 24, 2008, I was forced to urinate in the field the short time we were there. On this day, we got to the field late because we first had to inventory Raven and Eagle tool shade.

<u>I S S U E S</u>

(1). Asst. Warden Delaney violated my 1st and 14th Amendment rights to the United States Constitution to be free from retaliation in exercising my right to file grievance by showing deliberate indifference when he failed to stop Lt. Col. Sterling and his subordinates from harassing, intimidating and threatening inmate counsels at Camp D with whom he later retaliated by directing or encouraging Capt. Dufour to falsify a disciplinary report that he found a home made handcuff key in my locker box when he was not the officer who shook me down.

(2). Ms. Trish Foster violated my 1st and 14th Amendment rights to the United States Constitution to be free from retaliation in exercising my right to file grievance by showing deliberate indifference when she failed to stop Lt. Col. Sterling and his subordinates from harassing, intimidating and threatening inmate counsels at Camp D with whom he later retaliated by directing or encouraging Capt. Dufour to falsify a disciplinary report that he found a home made handcuff key in my locker box when he was not the officer who shook me down.

(3). Lt. Col. Sterling violated my 1st Amendment right to the United States Constitution when he directed or encouraged Capt. Dufour to falsify a disciplinary report that he found a home made handcuff key in my locker box, in retaliation for me filing a complaint against him.

(4). Capt. Dufour violated my 1st Amendment right to the United States Constitution when he falsified a disciplinary report that he found a home made handcuff key in my locker box, in retaliation for me filing a complaint against Lt. Col. Sterling.

(5). Lt. Bordelon violated my 1st. Amendment right to the United States Constitution when he injured a public record (Log book) by falsifying a letter that he was with Capt. Dufour when he found the handcuff key in my locker box to coverup a retaliation.

(6). Cadet Wilson violated my 1st Amendment right to the United States Constitution when he injured a public record (Log book) by falsifying a letter that he shook only my laundry bag down while Capt. Dufour and Lt. Bordelon shook my locker box down to coverup a retaliation.

This grievance is seperate and distinct from my DB appeal because there I filed different issues under Due Process and Civil Right violations, oppose to the Deliberate Indifference and First Amendment violations I have here.

Warden Cain, since this matter has elevated to a more profound but potent security breach, my stay here would be detrimential and I ask that you please move me to the Main Prison East Yard where I came from.

<u>Relief Requested</u>

(1). To be restored my job as an inmate counsel

(2). That this writeup be expunged from my prison jacket.

(3). That I receive inmate counsel back pay

(4). That I receive compensatory damages from each party mentioned in this grievance of $20.00 for each day I stood falsily accused of this rule infraction

2.

(5). That I receive punitive damages from
      each party mentioned in this grievance of
      $20.00 for each day I stood falsily accused
      of this rule infraction.


   Wherefore, I pray that this ARP is accepted
and granted in its entirety. And that the ~~attached~~
attached informal complaint is accepted as well.

                              Respectfully submitted,

                              Erin Hunter
                              Mr. Erin Hunter #111799
                              Camp D; Raven 2-R-5
                              La. State Penitentiary
                              Angola, La. 70712

cc.

9.

Exhibit "M"

[illegible]

Mr. Erin Hunter #111793
Camp D, [illegible]
La. State Penitentiary
Angola, La. 70712

Mr. Trish Foster
Legal Programs Director
La. State Penitentiary
Angola, La. 70712

Re: ARP No. LSP-[illegible]

Dear Mr. Foster,

[illegible] ARP [illegible]

Is it [illegible] possible, would you [illegible] send my ARP to the secretary of the Department of Corrections [illegible]

Thank you [illegible]

Yours truly

Erin Hunter

c.c.

Exhibit "N"

April 27, 2008

To: Warden Burl Cain

From: Inmate Erin Hunter #111799
      Camp D, Raven 2-R-5

      Re: ARP No. LSP-2008-0912

Warden Cain,

On March 25, 2008, I filed an ARP to your office complaining on Camp D security for harassing, threatening, intimidating and then retaliating against the inmate counsels at Camp D.

On April 14, 2008, Ms. Trish Foster rejected my ARP without giving any reasons.

On April 15, 2008, I wrote Ms. Foster a letter concerning this ARP and she failed to respond. Ms. Foster is also a party of this ARP and her affiliation with it is a conflict of interest. My first complaint with the security at Camp D harassing the inmate counsels were brought to her attention first since she was my supervisor, and to Asst. Warden Tim Delaney's attention. So she had full knowledge of this matter before the ARP was filed.

All I am asking for Warden Burl Cain is fairness in your grievance process. I have been already dealt a bad hand and setup with a home made handcuff key all because I tried to stopped the an influential ranking security

1.

officer from harassing the inmate counsels with whom I was one of them. Now I have become a marked inmate with security all because of one individual.

I am asking to please allow my ARP to take it proper course because it is highly probable that the courts would not accept my complaint unless my grievance is exhausted.

Thanks advance for your considerate attention

Your truly,

Eric Hunter

2.



